# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHARLES MARSH,<br>Individually and on Behalf of<br>All Others Similarly Situated,<br><br>　　　　　　　　Plaintiff,<br>v.<br><br>UNION RAILROAD COMPANY, LLC,<br>TRANSTAR, LLC, UNITED STATES<br>STEEL CORPORATION and<br>SMART TRANSPORTATION DIVISION,<br><br>　　　　　　　　Defendants. | CIVIL ACTION NO.:<br><br>ADEA COLLECTIVE ACTION<br>AND LABOR MANAGEMENT<br>RELATIONS CLASS ACTION<br><br>**JURY TRIAL DEMANDED** |

## COLLECTIVE/CLASS ACTION COMPLAINT

Plaintiff, Charles Marsh, individually and on behalf of all similarly situated former employees of Union Railroad Company, LLC, alleges the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on personal knowledge.

## NATURE OF THE ACTION

1. Plaintiff, Charles Marsh (hereinafter "Plaintiff"), brings this action individually, and on behalf of all similarly situated former employees of Defendant, Union Railroad Company, LLC ("Union Railroad") who were targeted and improperly terminated due to their age.

2. In or about May 2012, Defendants, led by Union Railroad, Union Railroad General Superintendent, Joel Hudson; United States Steel Corporation ("U.S. Steel"), U.S. Steel General Manager, Jonathan Carnes, U.S. Steel Managing Director, Malisa Sommers; and Transtar, LLC ("Transtar"), initiated a pretextual scheme to terminate Union Railroad employees over age 40 ("Senior Employees").

1

3. Among other things, Defendants' scheme included forcing many Senior Employees to sign "last chance" agreements intended for employees with substance abuse problems, then manipulating Union Railroad's demerits policy to issue a disproportionate number of demerits to Senior Employees so they could be fired for cause.

4. Conversely, younger employees alleged to have committed the same or comparable offenses as Plaintiff and other Senior Employees routinely received no demerits, substantially less demerits or were given an opportunity to expunge demerits from their records over time.

5. In many cases, Senior Employees received a disproportionate number of demerits for technical offenses Union Railroad had historically exercised discretion to ignore.

6. At their grievance hearings and/or arbitrations, Plaintiff and other Senior Employees lacked adequate representation and were overwhelmingly denied relief due to a concerted effort by the Defendants to fabricate or exaggerate the bases for their terminations. In some cases, Union Railroad withheld potentially exculpatory evidence from Senior Employees without repercussion. Instead of fairly representing its union members as required by the collective bargaining agreement and applicable federal law, Defendant, Smart Transportation Division, was complicit in the scheme.

7. As further described below, Plaintiff and approximately 90 similarly situated former Union Railroad employees were victims of a discriminatory pattern and practice designed to weed out Senior Employees on the basis of their age.

8. Plaintiff, Charles Marsh, brings this action for violations of the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621, *et seq.* ("ADEA"), as a collective action pursuant to 29 U.S.C. § 626(b), incorporating section 16(b) of the Fair Labor Standards Act, 29 U.S.C. §

216(b), on behalf of himself individually and on behalf of those similarly situated: *i.e.,* all former employees of Union Railroad who, at the time of their termination, were 40 years of age or older and were improperly targeted for termination due to their age ("Senior Employees") (Counts I and II).  Plaintiff also seeks certification under Fed. R. Civ. P. 23 to pursue classwide claims against Defendant, Smart Transportation Division for breaches of the duty of fair representation under the National Labor Relations Act, 29 U.S.C. § 158, *et seq.* ("NLRA") (Count III).

9. Through this action, Plaintiff seeks an Order pursuant to 29 U.S.C. § 216(b) providing that notice of this ADEA action and an opportunity to opt-in be given to each Senior Employee.  Plaintiff further seeks all damages available to him individually as well as all damages available to the potential members of this proposed collective ADEA and classwide NLRA action.

## JURISIDCTION AND VENUE

10. This Court has subject matter jurisdiction over Plaintiff's ADEA claims pursuant to 29 U.S.C. § 626(c) and 29 U.S.C. § 1331.

11. This Court has subject matter jurisdiction over Plaintiff's NLRA claims pursuant to 28 U.S.C. § 1337(a) and 29 U.S.C. § 1331.

12. Personal jurisdiction exists over Defendants, Union Railroad Company, LLC, Transtar, LLC, United States Steel Corporation and Smart Transportation Division because, *inter alia*, they each maintain a principal place of business and/or conduct substantial business in the Commonwealth of Pennsylvania.  The amount in controversy exceeds $75,000.

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events and/or omissions giving rise to the Plaintiff's claims emanated from activities within this jurisdiction and Defendants conduct substantial business within this jurisdiction.

14. On or about July 23, 2019, Plaintiff filed a Charge of Discrimination for age discrimination with the Equal Employment Opportunity Commission ("EEOC"), which was dual filed with the Pennsylvania Human Relations Commission ("PHRC").

15. Exhibit "A" is a true and correct copy of Plaintiff's July 23, 2019 Charge of Discrimination with minor redactions for confidential identifying information. Subsequent amendments to Plaintiff's Charge of Discrimination have been made based on information that was made known to Plaintiff after July 23, 2019.

16. This ADEA action may proceed under 29 CFR § 1626.18(b) because more than 60 days have passed since Plaintiff filed his Charge of Discrimination with the EEOC.

17. Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

## THE PARTIES

18. Plaintiff, Charles Marsh, is an adult individual and a resident of the Commonwealth residing in Trafford, PA. On March 8, 2019, at the age of 57, Charles Marsh was improperly terminated from Union Railroad where he worked for nearly 12 years as a brakeman and, most recently, a conductor/remote control operator.

19. Defendant, Union Railroad Company, LLC ("Union Railroad") is a for-profit corporation incorporated under the laws of Delaware with a corporate headquarters in Pittsburgh, Pennsylvania and principal place of business in Duquesne, Pennsylvania. Union Railroad is a rail transportation company that, at all relevant times, employed approximately 500 individuals and was the direct employer of Plaintiff and other Senior Employees.

20. Defendant, Transtar, LLC ("Transtar") is a for-profit corporation incorporated under the laws of Delaware with a corporate headquarters and principal place of business in Pittsburgh, Pennsylvania. Union Railroad is a wholly owned subsidiary of Transtar, an entity engaged in the business of transporting raw materials and finished products for a variety of industries.

21. Defendant, United States Steel Corporation ("U.S. Steel") is a for-profit corporation incorporated under the laws of Delaware with a corporate headquarters and principal place of business in Pittsburgh, Pennsylvania. Union Railroad and Transtar are wholly owned subsidiaries of and operate in concert with U.S. Steel.

22. Defendant, Smart Transportation Division ("SMART TD" or "the Union"), is a non-profit corporation incorporated under the laws of Ohio with a corporate headquarters in North Olmsted, Ohio. SMART TD is a division of the Sheet Metal, Air, Rail and Transportation Union, the labor union that represented Plaintiff and other Senior Employees pursuant to a Collective Bargaining Agreement effective November 1, 1943 and last amended November 8, 2017.

## GENERAL FACTUAL ALLEGATIONS

**A.    Union Railroad's Discriminatory Application of Its Demerits Policy**

23. Union Railroad's demerits policy was created to provide a uniform structure to address employee rule and policy violations in a consistent and fair manner. According to Union Railroad, the policy serves as a tool to assure rule compliance while offering employees the opportunity to correct poor behavior as well as to facilitate additional training where necessary.

24. The demerits policy is used to manage employee discipline for offenses such as tardiness, safety violations and misuse of carrier property.

25. Under the policy, managers may use informal coaching in lieu of formal discipline (demerits) for minor violations and have significant discretion with respect to the number of demerits assessed if they elect to issue demerits.

26. If a manager elects to issue demerits, the maximum number of demerits that can be assessed for a single violation is 60. Employees who reach 100 demerits are subject to termination.

27. Union Railroad's demerits policy includes a provision for the removal of demerits from an employee's personnel records if the employee does not accrue additional demerits in the 12, 24 and 36 months following his or her last offense.

28. Beginning in or about May 2012, Transtar and Union Railroad, led by Sommers, Carnes, and Hudson, began manipulating the demerits policy to ensure that Plaintiff and other Senior Employees could be fired for cause.

29. As part of the scheme, Union Railroad compelled many Senior Employees to sign "last chance" agreements the company had historically used to informally manage disciplinary action for employees with substance abuse problems.

30. The "last chance" agreements were not sanctioned by the Collective Bargaining Agreement or the demerits policy. Plaintiff and other Senior Employees had no opportunity to bargain the terms of the "last chance" agreements.

31. The "last chance" agreements were signed by Plaintiff and other Senior Employees as well as Defendants, Union Railroad and Smart TD.

32. The "last chance" agreements stated Plaintiff and other Senior Employees could continue working at Union Railroad but were subject to immediate dismissal and waived all rights of appeal if accused of another offense. Contrary to the Collective Bargaining Agreement, the

"last chance" agreements expressly provided that Defendant, Smart TD, relinquished all rights to investigate or otherwise represent Plaintiff and other Senior Employees for future misconduct accusations.

33. Unlike the demerits policy, the "last chance" agreements contained no provision for the gradual removal of demerits for good behavior. Instead, they placed Plaintiff and other Senior Employees who devoted years of service to Union Railroad in a tenuous three (3) year probationary period.

34. With the "last chance" agreements in place, Union Railroad then targeted Plaintiff and other Senior Employees by applying the demerits policy against them in a manner inconsistent with the company's history and inconsistent with its application of the same policy for younger (under age 40) employees.

35. Unlike Plaintiff and other Senior Employees, younger employees alleged to have committed the same or comparable violations routinely received no demerits, substantially less demerits or were given an opportunity to expunge demerits from their records after a certain amount of time lapsed.

36. In many cases, Senior Employees received a disproportionately high number of demerits after they were accused of committing highly technical offenses such as "stealing" 4 minutes of overtime or causing a train to move a few inches into a "red zone."

37. Plaintiff and other Senior Employees were the last group of employees with ties to the "Old Guard," a term colloquially used to refer to longtime employees who believed that working at Union Railroad would provide a six-figure salary and full retirement benefits, including full pension benefits, and were afforded small perks such as the ability to sleep during "off-peak"

7

work hours.  Instead Plaintiff and other Senior Employees were subjected to a pattern and practice of discrimination on the basis of their age then abruptly terminated.

38. Upon information and belief, Plaintiff and other Senior Employees have since been replaced by younger candidates.

### B. Smart TD was Complicit in the Scheme to Terminate Senior Employees

39. Plaintiff and other Senior Employees were conductors, brakemen and/or switchtenders ("yardmen") exclusively represented by Defendant, Smart TD, pursuant to a Collective Bargaining Agreement effective November 1, 1943.

40. Under the Collective Bargaining Agreement, Plaintiff and other Senior Employees were entitled to an investigation, including a fair and impartial hearing, before they could be suspended or dismissed from service.

41. Upon information and belief, Defendant, Smart TD, retained or otherwise provide to Plaintiff and other Senior Employees the services of a law firm ("the Law Firm").

42. As part of this agreement Defendant, Smart TD would bring attorney-representatives from the Law Firm to regularly scheduled union meetings and introduce them as the "union attorneys." As a result, Plaintiff and other Senior Employees would seek counsel from those attorneys on a variety of work-related matters.

43. When discussing work-related disputes, such as claims of age discrimination, Plaintiff and other Senior Employees were routinely advised by representatives from the Law Firm that there was nothing they could do for them. When pressed further, Plaintiff and other Senior Employees were told that they had no other recourse but to rely on the union for work-related disputes because "when you're in [the company's] ballpark, you have to work by their rules."

44. When Plaintiff and other Senior Employees turned back to the union for help, Defendant Smart TD largely accepted the pretextual bases for Plaintiff and other Senior Employees' terminations rather than take steps to rebut the discriminatory application of the "last chance" agreements and demerits policy.

45. In addition, Defendant, Smart TD, either themselves or through the Law Firm, failed to inform Plaintiff and other Senior Employees that certain statute of limitations may apply to their disputes and filing grievances would not toll application of those statute of limitations to their claims of discrimination. In fact, Plaintiff and other Senior Employees were specifically told they were forbidden from seeking other outside counsel until they had arbitrated their claims and exhausted any applicable appeals.

46. As such, Defendant, Smart TD, either themselves or through the Law Firm, ensured that Defendants' discriminatory application of the "last chance" agreements and demerits policy would not be investigated by any outside and/or independent agency.

**C.   Improper Termination of Charles Marsh's Employment**

47. Plaintiff, Charles Marsh, was born on August 3, 1961.

48. On June 4, 2007, Plaintiff, Charles Marsh, was hired by Union Railroad as a brakeman.

49. Over the next eight years, Plaintiff was an exemplary employee. He was frequently provided with letters of commendation and on multiple occasions was asked by Union Railroad to train other employees, including managers, due to his experience, expertise and knowledge of the industry.

50. In or about 2010, Union Railroad promoted Plaintiff to conductor.

51. Over the next five years, Plaintiff met all the necessary performance metrics and maintained a low demerits record.

52. On February 11, 2019, Union Railroad alleged that Plaintiff committed a "cardinal rule" safety violation by allowing his engine to enter a "red zone" without obtaining the necessary clearance. The alleged violation was based on a breach of a few inches.

53. The only evidence supporting Union Railroad's allegation was its claim that Plaintiff's supervisor, J. R. Horrell, witnessed the incident while on board the train.

54. Plaintiff denied that he committed the violation and denied that J.R. Horrell could have seen the alleged violation from his vantage point. As a result, Plaintiff requested copies of a regularly maintained engine camera that would have objectively shown whether the violation occurred.

55. Before his grievance hearing, and again before his arbitration hearing, Plaintiff request copies of the engine video. To date, Union Railroad has refused to produce the video and has provided no justification for its refusal.

56. Defendant, Smart TD, took no meaningful steps to secure a copy of the engine camera.

57. Despite being denied any real opportunity to contest the alleged offense, Plaintiff was assessed 60 demerits and terminated from Union Railroad effective March 8, 2019.

58. At the time of his termination, Plaintiff was 57 years old.

**COLLECTIVE/CLASS ACTION ALLEGATIONS**

59. Plaintiff's collective and class claims derive from a single course of conduct by the Defendants. The objective facts are essentially the same for Plaintiff and all other Senior Employees. Within each Claim for Relief, the same legal standards under federal law govern.

60. Accordingly, Plaintiff brings this collective ADEA action pursuant to 29 U.S.C. § 626(b), incorporating section 16(b) of the Fair Labor Standards Act, 29 U.S.C. § 216(b) and brings this putative NLRA class action pursuant to Federal Rule of Civil Procedure 23.

61. Collective treatment of Plaintiff's ADEA claim is proper because Plaintiff and other Senior Employees are "similarly situated" within the meaning of 29 U.S.C. § 216(b). A factual nexus exists between the manner in which Defendants' conduct affected Plaintiff and the manner in which Defendants' conduct affected other Senior Employees.

62. Plaintiff further seeks to certify a class under Fed. R. Civ. P. 23 defined as follows to pursue classwide NLRA claims: all former employees of Defendant, Union Railroad, who were terminated from Union Railroad, and at the time of their termination were over age 40.

63. The prerequisites to maintaining a class action under Fed. R.Civ. P. 23(a) and (b) are met for the following reasons:

   A. **Numerosity:** Upon information and belief, at least 90 former Union Railroad employees were subject to the discriminatory conduct described herein, including Defendant, Smart TD's breach of its duty of fair representation. Therefore, the proposed NLRA Class is so numerous that joinder of all individual members is impractical.

B. **Commonality:** Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members. Among the questions of law and fact common to Plaintiff and Class Members are:

1. Whether Defendants discriminated against Plaintiff and other Senior Employees due to their age;

2. Whether a legitimate, non-discriminatory basis existed for Plaintiff and other Senior Employees' terminations;

3. Whether Defendant, Smart TD, acted or failed to act in such a way that was arbitrary, discriminatory and/or in bad faith in connection with Plaintiff and other Senior Employees' grievance hearings and/or arbitrations;

4. Whether Defendant, Smart TD, breached its duty of fair representation under the NLRA; and

5. Whether Defendant, Smart TD's breach of its duty of fair representation under the NLRA proximately harmed Plaintiff and other Senior Employees.

C. **Typicality:** Plaintiff's claims are typical of the claims of Class Members because they were each terminated from Union Railroad on the basis of their age and failed to receive fair representation by Defendant, Smart TD, as required by the Collective

Bargaining Agreement and the NLRA. As such, the claims or defenses of the representative party are typical of the claims or defenses of the class.

D. **Adequacy of Representation:** Plaintiff will fairly and adequately protect the interests of Class Members. Plaintiff has retained counsel competent and experienced in complex class action litigation and with adequate resources to assure the interests of the Class are protected. The named Plaintiff is typically situated and has no conflict of interest with the Class as a whole.

E. **Class Action Maintainable under Rule 23(b)(2):** A class action is appropriate because common questions of law and fact predominate over any individual questions affecting only individual members. Class treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

F. **Class Action Maintainable Under Rule 23(b)(3):** By engaging in a common pattern and practice of discrimination, the Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making a class-wide NLRA action the appropriate remedies for the Class.

G. **Ascertainability:** The Class Members are ascertainable because Defendants can identify every single class member from their regularly maintained employee personnel records and/or union records. Accordingly, nothing more than a review of Defendants' records maintained in the ordinary course of business will be necessary to ascertain all potential Class Members.

## COUNT I
### VIOLATION OF THE ADEA – DISPARATE TREATMENT
**(by Plaintiff, Charles Marsh, Individually and on behalf of Similarly Situated Senior Employees v. Defendants, Union Railroad, Transtar, and U.S. Steel)**

64. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

65. Plaintiff and other Senior Employees were over age 40 at the time of their terminations.

66. Plaintiff and other Senior Employees were sufficiently qualified for their former positions at Union Railroad.

67. Defendants discriminated against Plaintiff and other Senior Employees because of their age. Age was a determinative factor in Defendants' decision to terminate Plaintiff and other Senior Employees.

68. Plaintiff and other Senior Employees have since been replaced by younger candidates.

69. Defendants discriminatory actions, as described herein, constitute a violation of the ADEA.

70. Defendants' violation of the ADEA was intentional and willful under the circumstances and warrant the imposition of liquidated damages.

71. As a direct result of Defendants' discriminatory conduct, Plaintiff and other Senior Employees have in the past incurred, and will in the future incur, a loss of earnings and/or earnings capacity, loss of benefits, and other injuries, the full extent of which is not known at this time.

**COUNT II**
**VIOLATION OF THE ADEA – DISPARATE IMPACT**
**(by Plaintiff, Charles Marsh, Individually and on behalf of Similarly Situated Senior Employees v. Defendants, Union Railroad, Transtar, and U.S. Steel)**

72. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

73. Plaintiff and other Senior Employees were over age 40 at the time of their terminations.

74. Plaintiff and other Senior Employees were sufficiently qualified for their former positions at Union Railroad.

75. Defendants discriminated against Plaintiff and other Senior Employees because of their age. Age was a determinative factor in Defendants' decision to terminate Plaintiff and other Senior Employees.

76. Plaintiff and other Senior Employees have since been replaced by younger candidates.

77. Defendant, Union Railroad's demerits policy is facially neutral because it purports to apply to all employees in a consistent and fair manner.

78. Upon information and belief, Defendants' application and enforcement of the demerits policy resulted in a statistically significant disparity in the number and/or nature of demerits issued to Plaintiff and other Senior Employees, ultimately resulting in their termination.

79. Upon information and belief, Defendants' application and enforcement of Union Railroad's "last chance" agreements resulted in a statistically significant disparity in the number and/or nature of demerits issued to Plaintiff and other Senior Employees, ultimately resulting in their termination.

80. As a direct and proximate result of Defendants' violations of the ADEA, Plaintiff and other Senior Employees have sustained the injuries set forth herein.

## COUNT III
## BREACH OF DUTY OF FAIR REPRESENTATION UNDER SECTION 8(b)(1)(A)
**(by Plaintiff Charles Marsh Individually, and on behalf of all Similarly Situated Persons v. Defendant, Smart TD)**

81. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

82. Under the Collective Bargaining Agreement, Defendant, Smart TD was the exclusive bargaining representative for Plaintiff and other Senior Employees.

83. Defendant, Smart Transportation Division, breached its duty to fairly represent Plaintiff and other Senior employees by acting or failing to act in such a way that was arbitrary, discriminatory and/or in bad faith.

84. Defendant, Smart TD's conduct seriously undermined the integrity of the arbitral process by preventing Plaintiff and other Senior Employees from rebutting the discriminatory application of Union Railroad's demerits policy and/or "last chance" agreements.

85. Defendant, Smart TD's conduct contributed to the erroneous outcome of the contractual proceedings.

86. Plaintiff and other Senior Employees were proximately harmed by Defendant, Smart TD's breach of its duty of fair representation.

## **PRAYER FOR RELIEF**

Plaintiff, Charles Marsh, individually and on behalf of all others similarly situated persons, respectfully requests that this Court enter judgment against the Defendants as follows:

    A.    Declaring this action to be an ADEA collective action properly maintained under 29 U.S.C. § 216(b);

    B.    Entering an order requiring Defendants to provide Plaintiff the names, dates of birth, length of employment and last known contact information, including physical addresses, e-mail addresses, and telephone numbers of all former Union Railroad employees who, at the time of their termination, were over age 40;

    C.    An order directing that notice and opportunity to opt-in be given to all former Union Railroad employees who, at the time of their termination, were over age 40;

    D.    Declaring the common acts and practices complained of herein to be a violation of the ADEA;

    E.    Declaring the common acts and practices complained of herein to be a violation of the NLRA duty of fair representation;

F. An award of compensatory damages to Plaintiff and other Senior Employees for all past and future lost earnings, benefits, including but not limited to pension benefits, lost as a result of Defendants' discriminatory conduct;

G. An award of liquidated damages to Plaintiff and other Senior Employees;

H. An award to Plaintiff and other Senior Employees of the costs of this action, together with reasonable attorney's fees;

I. An award to Plaintiff and other Senior Employees any and all other damages appropriate under the ADEA, and NLRA; and

J. Such other relief as may be appropriate under the circumstances.

**JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

**ANAPOL WEISS**

 /s/ Sol H. Weiss
Sol H. Weiss, Esquire (ID #15925)
Paola Pearson, Esquire (ID # 318356)
One Logan Square
130 N. 18th St., Suite 1600
Philadelphia, PA 19103
215-735-1130 (P)
215-875-7701 (F)
sweiss@anapolweiss.com
ppearson@anapolweiss.com

**EDGAR SNYDER & ASSOCIATES**

 /s/ Sammy Y. Sugiura
Sammy Y. Sugiura, Esquire (ID #209942)
U.S. Steel Tower, 10th Floor
600 Grant Street
Pittsburgh, PA 15219
412-391-2101 (P)
412-391-7032 (F)
ssugiura@edgarsnyder.com

*Attorneys for Plaintiff, Charles Marsh, Individually and on Behalf of All Those Similarly Situated*